IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

RONALD L. PEASE,

Plaintiff,

vs.

Civil Action No.
5:06-CV-0264(NAM/DEP)

MICHAEL J. ASTRUE, Commissioner
of Social Security,[1]

Defendant.

APPEARANCES:

OF COUNSEL:

FOR PLAINTIFF:

HINMAN, HOWARD LAW FIRM
P.O. Box 5250
80 Exchange Street
700 Security Mutual Building
Binghamton, NY 13902-5250

EUGENE D. FAUGHNAN, ESQ.

FOR DEFENDANT:

HON. GLENN T. SUDDABY
United States Attorney for the
Northern District of New York
100 S. Clinton Street
Syracuse, NY 13261

KIMBERLEY L. SCHIRO, ESQ.
Special Assistant U.S. Attorney

OFFICE OF GENERAL COUNSEL

BARBARA L. SPIVAK, ESQ.

---

[1] Plaintiff's complaint, which was filed on March 1, 2006, named Jo Anne B. Barnhart, the former Commissioner of Social Security, as the defendant. On February 12, 2007, Michael J. Astrue took office as Social Security Commissioner. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. *See* 42 U.S.C. § 405(g).

Social Security Administration                 Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Ronald L. Pease, who suffers from various conditions

including back pain, diabetes, and depression, has commenced this

proceeding seeking judicial review of the denial of his application for

disability insurance benefits under the Social Security Act, based upon an

administrative finding that he was not disabled at the relevant times.

Plaintiff maintains that in finding no disability, the administrative law judge

("ALJ") assigned by the agency to hear and decide the matter erred in a

number of ways, including by 1) failing, when determining Pease's

residual functional capacity ("RFC"), to rely on his treating physician's

assessment rather than evaluations conducted by state agency

consultative examiners; 2) improperly discounting opinions of his treating

physician; and 3) improperly relying on the medical-vocational guidelines

(the "grid") set forth in the governing regulations, 20 C.F.R. Pt. 404, Subpt.

P, App. 2 to determine the issue of disability, rather than eliciting

testimony from a vocational expert, in light of the existence of

nonexertional impairments which serve to significantly erode the job base

upon which the grid is predicated.

Having considered the Commissioner's determination in light of plaintiff's arguments, I find that it resulted from the application of proper legal principles, and is supported by substantial evidence.

I.     BACKGROUND

Plaintiff was born on February 24, 1957; at the time of issuance of the ALJ's determination in this matter, he was forty-eight years old. Administrative Transcript at 20, 70, 488.[2]  At the relevant times the plaintiff, together with his wife and two children, ages sixteen and fourteen, resided in a single floor dwelling located in Bridgeport, New York.  AT 70-72, 489.  Plaintiff is a high school graduate, and while he has taken some college courses, he has been unable to complete his college education. AT 100, 112, 491.

Plaintiff has not worked since March 5, 2003.  AT 107, 492.  Prior to that date, Pease was employed at various times as a home health aide, housekeeping supervisor, jail guard, and nuclear biological chemical specialist.  AT 107, 123-35, 492.  Plaintiff also served as a member of the National Guard until December of 1997, when his physical condition then

_____

[2]     Portions of the administrative transcript of evidence and proceedings before the agency, Dkt. No. 3, filed together with the Commissioner's answer, will be cited as "AT ___."

3

precluded him from participating in required drills.  AT 492.

Plaintiff began experiencing back pain in November 1994.  AT 181. Plaintiff was initially referred by Dr. James Telonis, his general care physician, to Dr. Patrick Connolly, an orthopedic surgeon at the State University of New York Health Science Center in Syracuse, New York, for a consultative diagnosis and treatment of his back condition.  AT 181-83, 327.  Over the following year, Dr. Connolly pursued several non-operative courses of treatment, including epidural steroid injections; those efforts, however, failed to alleviate plaintiff's back pain.  AT 184-85.

On January 24, 1996, plaintiff underwent back surgery, thereafter showing some improvement with the assistance of post-operative exercises.  AT 186-89, 327.  While the severity of plaintiff's back symptoms after the surgery fluctuated over the 1997-2002 time period, he was able to return to his previous job in the Onondaga County Sheriff's Department in 1999, with accommodation, in the form of a job duty modification allowing him to work sitting at a desk without being required to have any inmate contact.  *See* AT 194-202, 235-42.

Beginning in 2002, Dr. Connolly discerned that plaintiff's back condition was progressively worsening to a point where, in his view, a second operation might be required.  *See* AT 202-06.  Magnetic Resonance Imaging testing of the plaintiff, conducted at Dr. Connolly's

4

request on February 14, 2002, revealed bilateral neural foraminal narrowing at the L3-4, L4-5, and L5-S1 levels.  AT 223-25.  A radiological examination conducted on July 12, 2002, also upon referral from Dr. Connolly, revealed the existence of "a question of degenerative change at L5 and the transitional vertebrae."  AT 226.

In late 2002, Dr. Connolly recommended that the plaintiff undergo additional surgery on his back, and noted that plaintiff was not able to continue working.[3]  AT 205-06.  Plaintiff ultimately underwent anterior posterior spinal fusion from L3 to S1 on July 23, 2003.[4]  AT 208-09, 212, 355-63.

On August 6, 2003, following plaintiff's second back surgery, Registered Nurse Practitioner ("RNP") Donna Schermerhorn reported that he was "doing well with his pain pattern, with control of his diabetes and his blood pressure."[5]  AT 210.  In a report dated September 8, 2003, Dr. Connolly documented excellent improvement in plaintiff's condition, noting that there were no signs of nerve tension, the numbness in plaintiff's legs

---

[3]      As was noted previously, plaintiff ceased working on March 5, 2003.  AT 107, 492.

[4]      The recommended back surgery was significantly delayed, apparently as a result of a question regarding whether it would be authorized by the necessary Workers' Compensation decision-makers.  *See* AT 207.

[5]      RNP Schermerhorn worked initially for Dr. Connolly, and later for his replacement, Dr. Fredrickson. *See* AT 210, 213.

was virtually gone, and there was "good relief of the back pain."[6]  AT 211.

Those findings were reiterated in a report of a November 17, 2003 follow-

up visit.  AT 212.  On that occasion, Dr. Connolly noted that plaintiff should

increase his activities and exercises, but opined that he would not be

employable any time in the near future.  *Id.*  Dr. Connolly further stated his

belief that plaintiff qualified for Social Security benefits "in that he is unable

to work in any capacity for any job description in a predictable fashion."

*Id.*

RNP Schermerhorn again examined the plaintiff on February 12,

2004, on that occasion reporting that he had improvement with his back

pain due to physical therapy, though he continued to complain of

discomfort.  AT 213.   RNP Schermerhorn further indicated that plaintiff

was neurologically intact, although his range of motion was limited, and

that he had normal gait and was not taking any medications.  *Id.*

On May 6, 2004, RNP Schermerhorn examined plaintiff's back and

reported that he was neurologically intact, his range of motion was limited,

he had normal gait and he could walk short distances without difficulty but

walking long distances aggravated his back pain.  AT 213.

Dr. Bruce Fredrickson, who replaced Dr. Connolly when he left the

---

[6]     Plaintiff began physical therapy rehabilitation, following his back surgery, in October of 2003.  AT 371-72.

6

Health Science Center, reported on July 8, 2004 that while plaintiff complained of an acute flare-up of his back pain, x-rays revealed a solid fusion, and there was no other evidence of instability or pathology, concluding that plaintiff had reached his probable maximum medical improvement.  AT 212, 214.  A few days later, on July 12, 2004, Dr. Fredrickson expressed his view in a letter to Dr. Jeffrey Kahn that plaintiff was doing "reasonably well" and solicited the doctor's opinion as to whether plaintiff was capable of returning to some type of limited working environment.  AT 215.

In a report of a visit to Dr. Frederickson's office on September 15, 2004, RNP Schermerhorn noted that plaintiff remained neurologically intact, his range of motion was limited, and he had a normal gait.  AT 216.  RNP Schermerhorn later observed on December 8, 2004, that plaintiff was improving, but also noted that Pease claimed to experience lower back pain when standing or sitting for prolonged periods.  AT 217.  The nurse practitioner further found, however, that plaintiff had a normal gait and could heel and toe walk, and that there were no significant neurological deficits, although plaintiff was still limited in his range of motion.[7]  *Id.*  On

---

[7]     After attempting, without success, to refer Pease to Dr. Jeffrey Kahn, a rehabilitation specialist, who had previously seen the plaintiff on several occasions, *see* AT 235-245, Dr. Fredrickson's office shifted courses and sent him to Dr. Stephen Labduska for evaluation.  AT 217-18.

March 2, 2005, Dr. Fredrickson again evaluated plaintiff, noting that his condition remained unchanged from his previous examination.  AT 219.  Upon referral from Dr. Frederickson, plaintiff was examined by a rehabilitation specialist, Dr. Stephen Lebduska, on April 1, 2005.  In a report generated as a result of that examination, Dr. Lebduska observed that plaintiff had a minimally asymmetric gait, with diminished stance on the left lower extremity.  AT 478-81.  Dr. Lebduska also noted there was moderate tenderness in plaintiff's midlumbar level, that active range of motion in the lumbar spine was limited, there was full knee extension with some pain on the left, sensory testing revealed diminished sensation in the left leg, there was good hip flexion, manual muscle testing was 5/5 except for the ankle on the left side, and Pease could balance on one leg with assistance.  AT 479-80.  Dr. Lebduska concluded by stating that while he felt plaintiff had a permanent partial disability and that there was no more that could be offered in the sense of conservative care, he also believed plaintiff was capable of performing sedentary work.  AT 480.

RNP Schermerhorn again examined the plaintiff on April 13, 2005, reporting that during the examination plaintiff manifested sensory deficits in his left lateral thigh, normal gait, decreased range of motion with flexion and extension, and no nerve tension signs, with positive straight leg raises where the left was greater than the right.  AT 221.  RNP Schermerhorn

8

further noted, however, that plaintiff could heel and toe walk with some discomfort in his back, and that his strength was maintained in his lower extremities at 5/5.  *Id.*

In addition to his back condition, at times relevant to his claim for benefits plaintiff has suffered from diabetes and depression.  During the course of 2002, plaintiff was prescribed insulin and Actose for his diabetes, and Zoloft for his depression.  AT 257-66.  In November 2003, plaintiff received a refill of Actose for his diabetes, and in December 2003, a notation was made that plaintiff requested a refill of the Zoloft and Actose prescriptions for his depression and diabetes, respectively.  AT 275-76.  In March and April of 2004, plaintiff again complained of feeling depressed, and was prescribed Zoloft by medical personnel.  AT 280, 283. On August 3, 2004, plaintiff received another yet refill of Zoloft and Actose for his depression and diabetes problems, respectively.[8]  AT 286.

In addition to his various treating sources the plaintiff, and in some cases his medical records alone, have been examined by various consultants.  On January 28, 2004, Dr. Sury Putcha, a state agency consultant, completed a physical residual functional capacity assessment,

---

[8]     Also on August 3, 2004, plaintiff's long time opthomologist, Dr. Allan Kanter, noted that despite the effect of plaintiff's diabetes on his eyesight, there was nothing discovered during an eye exam conducted by him that would prevent Pease from performing work- related functions.  AT 416-17.

opining that plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently; is capable of standing and walking for at least six hours in an eight hour workday; can sit for six hours in a similar period; and has an unlimited ability to push and/or pull.  AT 377-82.  Dr. Putcha further reported that plaintiff has occasional postural limitations, but discerned no manipulative, visual, communicative, or environmental limitations.  AT 379-80.

Dr. Jeanne Shapiro, a state agency psychiatrist, conducted a psychiatric examination of the plaintiff on February 4, 2004.  AT 383-87.  As a request of her examination, Dr. Shapiro found that plaintiff's manner of relating, social skills, and overall presentation was adequate; his thought process was coherent; he was oriented, calm, and relaxed; his attention, concentration, recent, and remote memory skills were intact; and his judgment was good.[9]  AT 385-86.  Dr. Shapiro concluded that while plaintiff may suffer from some psychiatric problems, they are not "significant enough to interfere with [his] ability to function on a daily basis."[10]  AT 386.

---

[9]     In reciting plaintiff's psychiatric history, Dr. Shapiro noted that plaintiff has no known history of psychiatric hospitalization or outpatient psychiatric treatment.  AT 383.

[10]     Addressing the plaintiff's ability to function on a daily basis, Dr. Shapiro noted in her examination that plaintiff is able to dress, bathe, and groom himself as well as cook, clean, shop, manage money, drive, and take public transportation.  AT 386.

On March 10, 2004, disability analyst M. Connelly noted findings that plaintiff did not display any abnormalities in his understanding or remembrance of simple instructions, use of judgment, response to supervisors or co-workers in usual work situations, in dealing with changes to routine work settings.  AT 389.

On March 19, 2004, Dr. M. Morog, another state agency psychiatrist, prepared a psychiatric review technique form regarding plaintiff, noting his finding that plaintiff's diagnosed impairment of depressive disorder not otherwise specified ("NOS") neither meets nor equals any of the presumptively disabling mental impairments listed in the controlling regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1, including specifically section 12.04.  AT 390-403.  Dr. Morog further concluded that plaintiff does not suffer from any limitations in his ability to perform the activities of daily living, maintain social functioning, or maintain concentration, persistence or pace, and has experienced no known episodes of decompensation.  *Id.*

On August 23, 2004, Dr. Michael Maselly, another state agency consultative examiner, examined the plaintiff and completed a report regarding plaintiff's physical impairments, which were noted to include lower back problems, diabetes, glaucoma, hypercholesteremia, and high blood pressure.  AT 419-23.  In conducting his physical examination, Dr.

Maselly found that plaintiff's gait was normal, he could walk on heels and toes without difficulty, squat was full and his stance was normal; no assistive devices were used by him; he did not need help changing for the exam nor did he need help getting on and off the examination table, and he was able to rise from a chair without difficulty.  AT 420.  Dr. Maselly also reported that plaintiff had full cervical and lumbar spine flexion, extension, and rotary movement bilaterally, straight leg raise was positive, there was a full range of motion in the upper and lower extremities, joints were stable, no muscle atrophy was evident, hand and finger dexterity was intact with grip strength 5/5 bilaterally, and he was neurologically intact.[11]  AT 421-22.  Dr. Maselly concluded that plaintiff has marked restrictions in standing, walking, squatting, kneeling, as well as lifting and carrying heavy objects as a result of his back surgeries, but noted no restrictions in activities requiring fine manipulation of his hands.  AT 422.

On August 24, 2004, Dr. Kristen Barry, another state agency consultative examiner, conducted a psychiatric evaluation of the plaintiff. AT 424-28.  In her report of that examination, Dr. Barry noted that plaintiff had no history of psychiatric treatment, apart from a prescription for Zoloft

---

[11]    In describing plaintiff's daily activities, which he apparently considered when making his assessment, Dr. Maselly noted that Pease is able to shower, bathe, and dress himself as well watch television, listen to the radio, read, and attend church, although noting that plaintiff's sons help with the cooking, cleaning, laundry, and shopping.  AT 420.

– a medication which the plaintiff had been taking for two years.  AT 424.

Dr. Barry reported that plaintiff felt somewhat discouraged and helpless,

but that his attention, concentration, and memory skills were intact and his

insight and judgment were good.  AT 426.  She further assessed that

plaintiff could follow and understand simple directions, maintain attention

and concentration, and though he had some "depressive symptomology,"

he was able to make appropriate decisions and relate well with others.  AT

427.

On September 9, 2004, Dr. Thomas Harding, another state agency

consultant, prepared a psychiatric review technique form in which he

noted his opinion that plaintiff's diagnosed impairments of depression

NOS and substance abuse neither meet nor equal any of the

presumptively disabling impairments listed in the regulations, 20 C.F.R. Pt.

404, Subpt. P, App. 1, including listings 12.04 and 12.09.[12]  AT 436-47.

Dr. Harding further opined that plaintiff suffers from mild limitations in his

abilities to perform the activities of daily living, maintain concentration,

persistence or pace, and maintain social functioning, but that he does not

suffer from episodes of decompensation.  AT 446.

---

[12]      In his report, Dr. Harding did not expand upon the substance abuse finding, nor did he disclose the nature of the substance being abused by Pease.  *See* AT 436-47.

A state agency medical consultant completed a physical residual functional capacity assessment concerning the plaintiff's limitations on September 7, 2004.[13]  AT 429-35.  In it, the examiner opined that plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently; is capable of standing and walking for at least six hours in an eight hour workday; can sit for six hours in a similar period; and has an unlimited ability to push and/or pull.  AT 430.  It was further reported that plaintiff does not experience any postural, manipulative, visual, communicative, or environmental limitations.  AT 430-32.

Despite his impairments, plaintiff testified during his administrative hearing that he is able to drive short distances; watch television; read; do the laundry; cook; and care for his personal needs.  AT 499-503; *see also* AT 157-67.  Plaintiff is also able to teach Sunday school classes, and regularly attends church services.  AT 162, 499-500.

II.   PROCEDURAL HISTORY

A.    Proceedings Before The Agency

Plaintiff filed an application for disability insurance benefits on July 27, 2004, alleging disability based upon the limiting effects of his back condition, diabetes, and depression and extending back to an attributed

---

[13]      The signature of the state agency consultive physician who conducted the assessment is not decipherable.  *See* AT 434-35.

onset date of March 5, 2003.  AT 70-72.  Following the denial of that
application at the initial review level, *see* AT 35, 37, a hearing was
conducted, at plaintiff's request, before ALJ Robert E. Gale to address
plaintiff's claim for benefits.  *See* AT 484-515.  Plaintiff was the only
witness to testify at that hearing.  *Id.*

On September 12, 2005, ALJ Gale issued a written decision finding
that plaintiff was not disabled, and accordingly denying his claim for
benefits.  AT 19-26.  After conducting a *de novo* review of plaintiff's
application, informed by the medical and other evidence amassed and the
testimony adduced, ALJ Gale applied the now familiar, five part sequential
test for determining disability, concluding at step one that plaintiff had not
engaged in substantial gainful activity since his alleged disability onset
date.  AT 20, 25.  At steps two and three of the disability algorythim, the
ALJ concluded that plaintiff's back pain, diabetes, and depression, were of
sufficient severity to significantly restrict his ability to perform basic work
activities, AT 22, 25, but that those conditions did not meet or equal the
listed, presumptively disabling impairments set forth in the governing
regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1, AT 22, 25.  In making that
determination, ALJ Gale discounted plaintiff's glaucoma, hypertension,
and hypercholesterolemia as not being of sufficient severity to meet the
step two test, finding that the medical records demonstrated that those

15

impairments were well-controlled by medication and did not result in any limitation upon plaintiff's ability to engage in work-related activities.  AT 22.

Before proceeding to step four of the sequential analysis, ALJ Gale determined that despite the limitations imposed by his medical conditions, plaintiff retains the residual functional capacity ("RFC") to perform exertional work demands consistent with those associated with sedentary work, further concluding that he also retains the capacity to understand, remember and perform simple and complex tasks, both with supervision and independently, and to respond appropriately in work settings to supervisors and co-workers alike.  AT 22-25.  In making that determination, ALJ Gale relied upon medical evidence in the record, including reports generated by treating and evaluating physicians, and rejected plaintiff's subjective testimony, to the effect that he cannot not perform work at any level of exertion, as not fully credible.  AT 22-23. Applying that RFC finding, ALJ Gale determined that plaintiff was unable to perform his past relevant work in light of its heavy exertional requirements but, relying upon the grid as a framework for determining the existence of available work which the plaintiff is capable of performing, concluded that a finding of "not disabled" was directed.  AT 24-25.  ALJ Gale thus concluded that plaintiff was not entitled to receive disability insurance benefits under the Act.  AT 25-26.  ALJ Gale's opinion became

16

a final determination of the agency when, on January 23, 2006, the Social Security Administration Appeals Council denied his request for review of that decision.  AT 5-7.

    B.   <u>This Action</u>

Plaintiff commenced this action on March 1, 2006.  Dkt. No. 1.  Issue was thereafter joined on June 13, 2006 by the Commissioner's filing of an answer, accompanied by a copy of an administrative transcript of the proceedings and evidence before the agency.  Dkt. Nos. 3, 4.  With the filing on July 28, 2006 of plaintiff's brief, Dkt. No. 5, and that on behalf of the Commissioner on August 25, 2006, Dkt. No. 6, the matter is now ripe for determination, and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(d).[14]  *See also* Fed. R. Civ. P. 72(b).

III.   <u>DISCUSSION</u>

    A.   <u>Scope of Review</u>

_____A court's review under 42 U.S.C. § 405(g) of a final decision by the

---

[14]    This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Martone*, 70 F. Supp. 2d at 148.  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197,

229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184

(2d Cir. 2003). To be substantial, there must be "'more than a mere

scintilla'" of evidence scattered throughout the administrative record. *Id.*;

*Martone,* 70 F. Supp. 2d at 148 (citing *Richardson*). "To determine on

appeal whether an ALJ's findings are supported by substantial evidence, a

reviewing court considers the whole record, examining the evidence from

both sides, because an analysis of the substantiality of the evidence must

also include that which detracts from its weight." *Williams*, 859 F.2d at

258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S.

Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards

have been applied, and/or that substantial evidence does not support the

agency's determination, the agency's decision should be reversed. 42

U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148. In such a case the

court may remand the matter to the Commissioner under sentence four of

42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to

develop a full and fair record or to explain his or her reasoning. *Martone*,

70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.

1980)). A remand pursuant to sentence six of section 405(g) is warranted

if new, non-cumulative evidence proffered to the district court should be

considered at the agency level. *See Lisa v. Sec'y of Dep't of Health and*

*Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

B.    <u>Disability Determination - The Five Step Evaluation Process</u>

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.] "  42 U.S.C. § 423(d)(1)(A).   In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).   If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

     C.    <u>The Evidence In This Case</u>

          1.    <u>Plaintiff's RFC</u>

Pivotal to the ALJ's finding of no disability was his determination regarding plaintiff's RFC.  Plaintiff challenges that RFC finding as inconsistent with evidence in the record.  Plaintiff maintains that the RFC determination is fatally flawed in light of the ALJ's reliance upon medical opinions of state agency consultative examiners instead of those of his treating physician, Dr. Connolly, who has reported that Pease cannot function at any exertional level.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  20 C.F.R. § 404.1545(a).  An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including

pain, and other limitations which could interfere with work activities on a regular and continuing basis.  *Id.*; *Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. §§ 404.1545(b), 404.1569a.  Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered.  20 C.F.R. §§ 404.1545(b), 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice.  *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris,* 728 F.2d at 587).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

After reviewing all of the available evidence, and considering plaintiff's  testimony, ALJ Gale in essence concluded that plaintiff was capable of meeting some modest work-related exertional requirements,

finding specifically that the plaintiff

> retains the following residual functional capacity: lift or carry 15 pounds occasionally and less than 10 pounds occasionally [sic] stand or walk 2 hours in an 8-hour day and sit 6 hours in an 8-hour day.  He is capable of understanding, remembering and performing most simple and complex tasks with supervision and independently and responding appropriately to supervisors, coworkers and [sic] work situations.[15]

AT 24.  Those findings regarding plaintiff's RFC support the conclusion that he is capable of meeting the exertional requirements of sedentary work.[16]

The ALJ's finding regarding plaintiff's RFC draws ample support

---

[15]   Although the redundant use of "occasionally" appears twice in the ALJ's decision, *see* AT 24, 25, it seems apparent that the ALJ intended to find the plaintiff capable of lifting or carrying up to fifteen pounds occasionally and less than ten pounds frequently.  This finding, which actually exceeds the exertional requirements of sedentary work, is supported by substantial evidence in the record, which includes at least two assessments opining that plaintiff can lift ten pounds (as distinct from less than ten pounds) frequently.  *See*, *e.g.*, AT 378, 430.

[16]   Sedentary work is defined by regulation as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.   Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  In addition, a ruling promulgated subsequent to this controlling regulation has clarified that sedentary work generally involves periods of standing or walking for a total of two hours in an eight hour work day, with sitting up to a total of approximately six hours in a similar period.  *See* Social Security Ruling ("SSR") 83-10, 1983 WL 31251.

from the record.  In 2003, shortly after plaintiff's second back surgery, Dr.

Connolly, his orthopedic surgeon, opined that Pease had experienced

relief from his back pain and recommended that he increase his activities

and exercises, although admittedly also expressing his belief that plaintiff

would be "unable to work in any capacity for any job description in a

predictable fashion."  AT 211-12.  In February of 2004, RNP

Schermerhorn noted that plaintiff had experienced improvement in his

back with physical therapy, and that he had normal gait.  AT 213.  RNP

Schermerhorn later observed in May of 2004 that plaintiff was able to walk

for short distances, though walking long distances aggravated his pain.

AT 213.  In July of 2004 Dr. Fredrickson, another treating orthopedist,

found plaintiff to be doing reasonably well, contemplating the return of

plaintiff to "some type of limited duty."  AT 215.  That view was echoed by

Dr. Lebduska, who on April 1, 2005 opined that plaintiff could perform

sedentary work.[17]  AT 480.

These findings, as well as others like them in the record, are fully

---

[17]     Dr. Labduska's evaluation appears to have been rendered in the context of plaintiff's Worker's Compensation claim.  In weighing the significance of that evaluation I have considered that disability standards under the Act differ significantly from those applicable under various state's Workers' Compensation Laws.  *Crowe v. Comm'r of Soc. Sec.*, No. 01-CV-1579, 2004 WL 1689758, at *3 (N.D.N.Y. July 20, 2004) (Sharpe, J.) (citing *Gray v. Chater*, 903 F. Supp. 293, 301 n. 8 (N.D.N.Y. 1995) ("Workers' compensation determinators are directed to the workers' prior employment and measure the ability to perform that employment rather than using the definition of disability in the Social Security Act.")).

consistent with the functional assessments of Drs. Sury Putcha and

Michael Maselly, both of whom are state agency physicians.  Dr. Putcha

opined that plaintiff can lift and carry twenty pounds occasionally and up to

ten pounds frequently; is capable of standing and walking for at least six

hours in an eight hour workday; can sit for six hours in a similar period;

and has an unlimited ability to push and/or pull.  AT 377-82.  Dr. Putcha

further noted that plaintiff has occasional postural limitations but no

discernable manipulative, visual, communicative, or environmental

limitations.[18] AT 379-80.  Dr. Maselly reported that plaintiff could walk on

heels and toes without difficulty, his squat was full; his stance was normal;

no assistive devices were used by him; he did not need help changing for

the exam nor did he need help getting on and off the examination table, he

was able to rise from a chair without difficulty; he exhibited full cervical and

lumbar spine flexion, extension, and rotary movement bilaterally;  there

was a full range of motion in the upper and lower extremities; hand and

finger dexterity was intact, with grip strength 5/5 bilaterally, and he was

neurologically intact.  AT 419-23.  Dr. Maselly did state, however, that

plaintiff was markedly restricted in his  standing, walking, squatting,

---

[18]     While another state agency consultant rendered the same findings as Dr.
Putcha regarding plaintiff's physical residual functional capacity, *see* AT 429-35, the
ALJ discounted that opinion as the product of an unacceptable medical source.  AT 24.

kneeling, and lifting and carrying heavy objects, but that there were no limitations in activities requiring fine manipulation of his hands.  AT 422.

Although plaintiff claims that the ALJ erroneously elevated the opinions of non-examining physicians, including principally those of Dr. Labduska, over the views of his treating physician, Dr. Connolly, to the effect that Pease is unable to work at any exertional level, the opinion of a state agency consultative examiner may constitute substantial evidence to support an ALJ's determination, provided that there is other supporting evidence in the record.  *See* 20 C.F.R. §§ 404.1527(f), 416.927(f); *see also Brunson v. Barnhart*, No. 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (noting that the opinions of non-examining sources may be considered provided they are supported by evidence in the record).

In this case, other objective findings and plaintiff's own testimony, in addition to the opinions from the non-examining sources, together establish that plaintiff does in fact retain the exertional ability to perform sedentary work, and thus the opinion of Dr. Connolly that plaintiff could do no work was not supported by the evidence.  Medical opinions in the record reveal that despite plaintiff's physical conditions, he has normal gait, is neurologically intact, and can walk on heels and toes.  AT 213, 216-17.  Moreover, plaintiff testified that he was able to drive short

27

distances; watch television; read; do the laundry; cook; and care for his

personal needs, as well as teach Sunday school classes and attend

church services.  AT 499-503.

Based on all the evidence, the ALJ did not err in concluding that

despite his conditions, the plaintiff retains the ability to meet the exertional

demands of sedentary work, and the ALJ's determination is supported by

substantial evidence in the record.

### 2.    Treating Physician

Intertwined with plaintiff's argument regarding the ALJ's RFC finding

is his contention that the ALJ improperly rejected a November, 2003

opinion of Dr. Connolly in which he expressed his belief that plaintiff is

qualified for Social Security "in that he is unable to work in any capacity for

any job description in a predictable fashion."  *See* AT 212.  While candidly

acknowledging that the ALJ properly refused to give that particular opinion

great weight since it addressed an issue specifically reserved for the

Commissioner, plaintiff nevertheless argues that the ALJ should have

considered the statement.

Ordinarily, the opinion of a treating physician is entitled to

considerable deference, provided that it is supported by medically

acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence.  *Veino*, 312 F.3d at 588;

28

*Barnett*, 13 F. Supp. 2d at 316.[19]  Such opinions are not controlling, however, if contrary to other substantial evidence in the record, including the opinions of other medical experts.  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino*, 312 F.3d at 588.  Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner.  *Veino*, 312 F.3d at 588.

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]"  *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527,

---

[19]     The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions from your treating sources . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.   When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions.  *Johnson*, 817 F.2d at 985-86; *Barnett*, 13 F. Supp. 2d at 316-17.

In this case, the ALJ did not entirely reject the opinions of Dr. Connolly, plaintiff's treating orthopedist.  Instead, the ALJ merely discounted Dr. Connolly's bald statement that plaintiff should qualify for Social Security benefits in light of his inability to do work in any capacity for any job, as constituting an opinion on an ultimate issue reserved for the Commissioner.  The rejection of Dr. Connolly's opinion regarding disability and eligibility for Social Security benefits is fully supported by both the agency's regulations and Second Circuit authority, which make it clear that the final determination of disability and a claimant's inability to work rests with the Commissioner.  20 C.F.R. § 404.1527(e)(1); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).  Accordingly, the ALJ did not err when he refused to give any weight to the particular statement made by Dr.

Connolly in November 2003 regarding the determination of disability.[20]

### 3.    Use of a Vocational Expert

_____In a further extension of his RFC argument, plaintiff maintains that the ALJ's error was compounded by his decision to resort to the use of the medical-vocational guidelines instead of garnering the opinion of a vocational expert despite the nonexertional limitations experienced by the plaintiff as a result of the side effects of his medication, chronic pain, as well as depression, in addition to his exertional impairments.

Ordinarily, the Commissioner can meet his burden in connection with the fifth step of the relevant disability test by utilizing the grid.  _Rosa v. Callahan_, 168 F.3d 72, 78 (2d Cir. 1999); _Bapp v. Bowen_, 802 F.2d 601, 604 (2d Cir. 1986).  The grid takes into consideration a claimant's RFC, as well as his or her age, education and work experience, in order to determine whether he or she can engage in substantial gainful work in the national economy.  _Rosa_, 168 F.3d at 78.  Whether or not the grid should be applied in order to make a step five determination presents a case-specific inquiry which depends on the particular circumstances involved.  _Bapp_, 802 F.2d at 605.  If a plaintiff's situation fits well within a particular

---

[20]    Plaintiff does not point to any other, non-conclusory opinions of treating sources, including Dr. Connolly, which were rejected or discounted by the ALJ, and a review of the record confirms the lack of any specific, objective findings of treating sources which are in conflict with the ALJ's RFC findings.

classification, then resort to the grid is appropriate.  *Id.*  If, on the other

hand, nonexertional impairments, including pain, <u>significantly</u> diminish[21]

the range of work permitted by exertional limitations, then use of the grid is

inappropriate, in which case further evidence and/or testimony is required.

*Rosa*, 168 F.3d at 78; *Bapp*, 802 F.2d at 605-06.

Taking into account plaintiff's RFC, age, education, and prior

vocational experience, the ALJ correctly utilized the grid.[22]  Based upon

the four factors to be examined, the grid clearly dictates a finding that

plaintiff was not disabled.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2.

Plaintiff cites the existence of significant nonexertional limitations in

support of his argument that the Commissioner should not have based his

finding of no disability on the grid.  Nonexertional impairments are

limitations or restrictions in functioning due to nervousness, anxiety or

---

[21]     In order to "'significantly diminish' the claimant's range of work, a non-exertional impairment must cause an 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive [her] of a meaningful employment opportunity.'"  *Brown v. Comm'r of Soc. Sec.*, No. 00 CV 1147, 2005 WL 1745655, at *3 (N.D.N.Y. June 30, 2005) (Sharpe, J.) (quoting *Bapp*, 802 F.2d at 606).

[22]     The ALJ relied on section 201.29 of the grid to make his finding that plaintiff was not disabled.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.29 (2005). This section, however, dictates findings for those individuals who are between the ages of eighteen and forty-four.  *Id.*  Utilization of this section was therefore inappropriate, since the plaintiff was forty-eight years old at the time the decision was rendered. Nonetheless, the applicable provisions in the grid pertaining to those individuals between the ages of forty-five and forty-nine, considered in conjunction with plaintiff's education and work experiences, including pertinently sections 201.21 and 201.22, would still dictate a finding of not disabled.  *Id.* at §§ 201.21-.22.  This apparent error thus does affect the vitality of the Commissioner's determination.

depression, maintaining attention or concentration, understanding or

remembering detailed instructions, and performing manipulative or

postural functions such as reaching, handling, stooping, climbing,

crawling, or crouching.  20 C.F.R. §§ 404.1569a(c), 416.969a(c); *see also*

Social Security Ruling ("SSR") 83-14, 1983 WL 31254, at * 1.  As one

court has explained,

> [a] nonexertional limitation is one imposed by the
> claimant's impairments that affect [his or] her ability
> to meet the requirements of jobs other than
> strength demands, and includes manipulative
> impairments and pain.

*Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997) (citing 20

C.F.R. § 404.1569(a), (c)).

In this instance, the medical records demonstrate that while plaintiff

is occasionally limited in his abilities to climb, balance, stoop, kneel,

crouch, and crawl, he experiences no manipulative, visual,

communicative, nor environmental limitations.  AT 379-80, 419-23.  Dr.

Masely found that plaintiff was able to get onto and off of the examination

table without any difficulty, he could rise from a chair without difficulty, his

stance was normal, his squat was full, there was full range of motion in his

upper and lower extremities, hand and finger dexterity were intact, and his

grip strength was 5/5.  AT 419-23.  Drs. Shapiro and Masely also noted

that plaintiff could groom, dress, and take care of himself, which was

confirmed through plaintiff's own testimony during which he further stated that he could drive short distances, do the laundry, and cook.  AT 386, 420, 499-503.  Additionally, RNP Schermerhorn and Drs. Fredrickson and Maselly reported that plaintiff had normal gait and could heel and toe walk. AT 213, 216-17, 221, 419-23.  While it is true that plaintiff complained during his testimony regarding the side effects associated with his medications, stating that they made him feel drowsy, AT 497-98, his medical records do not reflect any complaints made by him to his doctor's concerning this issue.

With respect to the plaintiff's claim of depression, it does not appear that he has any history of psychiatric hospitalization, and aside from taking Zoloft, he has not sought treatment for the condition.  AT 383, 424.  Drs. Shapiro and Barry, as well as disability analyst Connelly, all found that plaintiff's manner of relating, social skills, and overall presentation are adequate; his thought process is coherent; he is oriented, calm, and relaxed; his attention, concentration, recent, and remote memory skills are intact; and judgment is good.  AT 385-86, 389, 426-27.  Similarly, Dr. Morog concluded that plaintiff does not suffer from any limitations in his ability to perform the activities of daily living, maintain social functioning, or maintain concentration, persistence or pace, although Dr. Harding found mild limitations in these areas, and both found that plaintiff has

experienced no episodes of decompensation.  AT 390-403, 436-47.

Based upon their reviews, these medical professionals uniformly

concluded that plaintiff's depression was not severe.  AT 386, 389, 390-

403, 424-28, 436-47.

In sum, from a review of the record the ALJ's finding, to the effect

that plaintiff's nonexertional limitations resulting from pain, side effects

from medication and depression, did not sufficiently erode the range of

jobs upon which the grid is predicated, is well-supported.  Accordingly, the

Commissioner carried his burden at step five of the disability catechism.

4.     Plaintiff's Subjective Complaints of Pain

Although not specifically set out as a separate point, in his brief

plaintiff also alludes to a contention that in arriving at his finding of no

disability the ALJ improperly discounted his subjective complaints of

debilitating pain.

An ALJ must take into account subjective complaints of pain in

making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d),

416.929(a), (d).  When examining the issue of pain, however, the ALJ is

not required to blindly accept the subjective testimony of a claimant.

*Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Martone*, 70 F. Supp.

2d at 151 (citing *Marcus*).  Rather, an ALJ retains the discretion to

evaluate a claimant's subjective testimony, including testimony concerning

pain.  *See Mimms v. Heckler,* 750 F.2d 180, 185-86 (2d Cir. 1984).  In

deciding how to exercise that discretion the ALJ must consider a variety of

factors which ordinarily would be relevant on the issue of credibility in any

context, including the claimant's credibility, his or her motivation, and the

medical evidence in the record.  *See Sweatman v. Callahan*, No. 96-CV-

1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and

Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ

must reach an independent judgment concerning the actual extent of pain

suffered and its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective

clinical evidence demonstrating that claimant has a medical impairment

which one could reasonably anticipate would produce such pain, it is

entitled to considerable weight.[23]  *Barnett*, 13 F. Supp. 2d at 316; *see also*

20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony

concerning the intensity, persistence or functional limitations associated

with his or her pain is not fully supported by clinical evidence, however,

then the ALJ must consider additional factors in order to assess that

testimony, including: 1) daily activities; 2) location, duration, frequency and

---

[23]  In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

intensity of any symptoms; 3) precipitating and aggravating factors; 4)

type, dosage, effectiveness and side effects of any medications taken; 5)

other treatment received; and 6) other measures taken to relieve

symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective

medical evidence, and any other factors deemed relevant, the ALJ may

accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp. 2d

at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such

testimony is rejected, however, the ALJ must explicitly state the basis for

doing so with sufficient particularity to enable a reviewing court to

determine whether those reasons for disbelief were legitimate, and

whether the determination is supported by substantial evidence.  *Martone*,

70 F. Supp. 2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608

(S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial

evidence, the decision to discount subjective testimony may not be

disturbed on court review.  *Aponte v. Secretary, Dep't of Health & Human

Servs.,* 728 F.2d 588, 591 (2d Cir. 1984).

It may be, as plaintiff asserts, that he does suffer from some degree

of discomfort as a result of his back condition.  The fact that he suffers

from discomfort, however, does not automatically qualify him as disabled,

since "disability requires more than mere inability to work without pain."

*Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

It is unclear from plaintiff's brief as to what evidence he cites, including hearing testimony, which would support a finding that he experiences significant non-exertional limitations resulting from his pain. In any event the ALJ discussed the plaintiff's complaint of pain and, after considering his testimony, in comparison to the medical records and accounts of plaintiff's daily activities, concluded that they were not fully credible.  *See* AT 23.  Based upon a thorough review of the record I find that this determination is supported by substantial evidence.

IV.   SUMMARY AND RECOMMENDATION

_____While the medical evidence in the record supports the conclusion that plaintiff suffers from medically determinable conditions, including principally chronic lower back pain, diabetes, and depression, the ALJ's conclusion that despite these conditions he is capable of fulfilling the exertional requirements of sedentary work is supported by substantial evidence in the record.  And, inasmuch as the limitations associated with plaintiff's nonexertional impairments do not significantly diminish the range of work permitted by his exertional limitations, the ALJ's determination of no disability, based upon his resort to the grid, was proper.  It is therefore hereby

RECOMMENDED, that defendant's motion for judgment on the

pleadings be GRANTED, the Commissioner's determination of no disability AFFIRMED, and plaintiff's complaint DISMISSED in all respects.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     November 27, 2007
           Syracuse, NY


David E. Peebles
U.S. Magistrate Judge