**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RONALD L. PEASE,**

                                        **Plaintiff,**

         **v.**                                                    **5:06-CV-0264**
                                                                   **(NAM/DEP)**

**MICHAEL J. ASTRUE*,**
**COMMISSIONER OF SOCIAL SECURITY,**

                                        **Defendant.**
_____

**APPEARANCES:**                                  **OF COUNSEL:**

Hinman, Howard & Kattell, LLP              Eugene D. Faughnan, Esq.
700 Security Mutual Building
80 Exchange Street
Binghamton, New York 13902-5250
For Plaintiff

Andrew T. Baxter, Acting                   Kimberly L. Schiro, Esq.
United States Attorney for
the Northern District of New York
P.O. Box 7198-
100 South Clinton Street
Syracuse, New York 13261-7198

Office of General Counsel                  Barbara L. Spivak, Esq.
Social Security Administration
26 Federal Plaza
New York, New York 10278

         ** On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of the
         Social Security Administration.  Pursuant to Federal Rule of Civil Procedure 25(d)(1),
         he is automatically substituted for former Commissioner Joanne B. Barnhart as the
         defendant in this action.

**NORMAN A. MORDUE, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

Plaintiff Ronald L. Pease brings the above-captioned action pursuant to 42 U.S.C. §

405(g) of the Social Security Act, seeking a review of the Commissioner of Social Security's

decision to deny his application for disability benefits.  This matter was referred to United

States Magistrate Judge David E. Peebles for a Report and Recommendation pursuant to 28

U.S.C. §636(b)(1)(B) and Local Rule 72.3(d).   Magistrate Judge Peebles recommended that

this Court enter judgment on the pleadings affirming the Commissioner's decision denying

disability and dismissing plaintiff's claims.  Presently before the Court is plaintiff's objection

to the Report and Recommendation.[1]

## II.      FACTUAL BACKGROUND

Plaintiff has not objected to the Magistrate Judge's recitation of the background in this

case.  Accordingly, the Court adopts the portion of the Report and Recommendation entitled

"Background" in its entirety:

> Plaintiff was born on February 24, 1957; at the time of issuance of the ALJ's
> determination in this matter, he was forty-eight years old.   Administrative
> Transcript at 20, 70, 488.  At the relevant times the plaintiff, together with his wife
> and two children, ages sixteen and fourteen, resided in a single floor dwelling
> located in Bridgeport, New York. AT 70-72, 489.   Plaintiff is a high school
> graduate, and while he has taken some college courses, he has been unable to
> complete his college education. AT 100, 112, 491.
>
> Plaintiff has not worked since March 5, 2003.  AT 107, 492. Prior to that date,
> Pease was employed at various times as a home health aide, housekeeping
> supervisor, jail guard, and nuclear biological chemical specialist. AT 107, 123-35,
> 492.  Plaintiff also served as a member of the National Guard until December of
> 1997, when his physical condition then precluded him from participating in

---

[1] Defendant has not submitted a response to Plaintiff's Objections.

required drills.  AT 492.

Plaintiff began experiencing back pain in November 1994. AT 181.  Plaintiff was initially referred by Dr. James Telonis, his general care physician, to Dr. Patrick Connolly, an orthopedic surgeon at the State University of New York Health Science Center in Syracuse, New York, for a consultative diagnosis and treatment of his back condition. AT 181-83, 327. Over the following year, Dr. Connolly pursued several non-operative courses of treatment, including epidural steroid injections; those efforts, however, failed to alleviate plaintiff's back pain. AT 184-85.

On January 24, 1996, plaintiff underwent back surgery, thereafter showing some improvement with the assistance of post-operative exercises. AT 186-89, 327. While the severity of plaintiff's back symptoms after the surgery fluctuated over the 1997-2002 time period, he was able to return to his previous job in the Onondaga County Sheriff's Department in 1999, with accommodation, in the form of a job duty modification allowing him to work sitting at a desk without being required to have any inmate contact.  AT 194-202, 235-42.

Beginning in 2002, Dr. Connolly discerned that plaintiff's back condition was progressively worsening to a point where, in his view, a second operation might be required. AT 202-06.  Magnetic Resonance Imaging testing of the plaintiff, conducted at Dr. Connolly's request on February 14, 2002, revealed bilateral neural foraminal narrowing at the L3-4, L4-5, and L5-S1 levels. AT 223-25. A radiological examination conducted on July 12, 2002, also upon referral from Dr. Connolly, revealed the existence of "a question of degenerative change at L5 and the transitional vertebrae." AT 226.

In late 2002, Dr. Connolly recommended that the plaintiff undergo additional surgery on his back, and noted that plaintiff was not able to continue working. AT 205-06. Plaintiff ultimately underwent anterior posterior spinal fusion from L3 to S1 on July 23, 2003.  AT 208-09, 212, 355-63.

On August 6, 2003, following plaintiff's second back surgery, Registered Nurse Practitioner ("RNP") Donna Schermerhorn reported that he was "doing well with his pain pattern, with control of his diabetes and his blood pressure." AT 210. In a report dated September 8, 2003, Dr. Connolly documented excellent improvement in plaintiff's condition, noting that there were no signs of nerve tension, the numbness in plaintiff's legs was virtually gone, and there was "good relief of the back pain."  AT 211. Those findings were reiterated in a report of a November 17, 2003 followup visit.  AT 212.  On that occasion, Dr. Connolly noted that plaintiff should increase his activities and exercises, but opined that he would not be employable any time in the near future. Id. Dr. Connolly further stated his belief that plaintiff qualified for Social Security benefits "in that he is unable to

3

work in any capacity for any job description in a predictable fashion." Id.

RNP Schermerhorn again examined the plaintiff on February 12, 2004, on that occasion reporting that he had improvement with his back pain due to physical therapy, though he continued to complain of discomfort. AT 213. RNP Schermerhorn further indicated that plaintiff was neurologically intact, although his range of motion was limited, and that he had normal gait and was not taking any medications. Id.

On May 6, 2004, RNP Schermerhorn examined plaintiff's back and reported that he was neurologically intact, his range of motion was limited, he had normal gait and he could walk short distances without difficulty but walking long distances aggravated his back pain. AT 213.

Dr. Bruce Fredrickson, who replaced Dr. Connolly when he left Health Science Center, reported on July 8, 2004 that while plaintiff complained of an acute flare-up of his back pain, x-rays revealed a solid fusion, and there was no other evidence of instability or pathology, concluding that plaintiff had reached his probable maximum medical improvement. AT 212, 214. A few days later, on July 12, 2004, Dr. Fredrickson expressed his view in a letter to Dr. Jeffrey Kahn that plaintiff was doing "reasonably well" and solicited the doctor's opinion as to whether plaintiff was capable of returning to some type of limited working environment. AT 215.

In a report of a visit to Dr. Frederickson's office on September 15, 2004, RNP Schermerhorn noted that plaintiff remained neurologically intact, his range of motion was limited, and he had a normal gait. AT 216. RNP Schermerhorn later observed on December 8, 2004, that plaintiff was improving, but also noted that Pease claimed to experience lower back pain when standing or sitting for prolonged periods. AT 217. The nurse practitioner further found, however, that plaintiff had a normal gait and could heel and toe walk, and that there were no significant neurological deficits, although plaintiff was still limited in his range of motion. Id.

On March 2, 2005, Dr. Fredrickson again evaluated plaintiff, noting that his condition remained unchanged from his previous examination. AT 219. Upon referral from Dr. Frederickson, plaintiff was examined by a rehabilitation specialist, Dr. Stephen Lebduska, on April 1, 2005. In a report generated as a result of that examination, Dr. Lebduska observed that plaintiff had a minimally asymmetric gait, with diminished stance on the left lower extremity. AT 478-81. Dr. Lebduska also noted there was moderate tenderness in plaintiff's mid lumbar level, that active range of motion in the lumbar spine was limited, there was full knee extension with some pain on the left, sensory testing revealed diminished sensation in the left leg, there was good hip flexion, manual muscle testing was 5/5

except for the ankle on the left side, and Pease could balance on one leg with assistance. AT 479-80. Dr. Lebduska concluded by stating that while he felt plaintiff had a permanent partial disability and that there was no more that could be offered in the sense of conservative care, he also believed plaintiff was capable of performing sedentary work. AT 480.

RNP Schermerhorn again examined the plaintiff on April 13, 2005, reporting that during the examination plaintiff manifested sensory deficits in his left lateral thigh, normal gait, decreased range of motion with flexion and extension, and no nerve tension signs, with positive straight leg raises where the left was greater than the right. AT 221. RNP Schermerhorn further noted, however, that plaintiff could heel and toe walk with some discomfort in his back, and that his strength was maintained in his lower extremities at 5/5. Id.

In addition to his back condition, at times relevant to his claim for benefits plaintiff has suffered from diabetes and depression. During the course of 2002, plaintiff was prescribed insulin and Actose for his diabetes, and Zoloft for his depression. AT 257-66. In November 2003, plaintiff received a refill of Actose for his diabetes, and in December 2003, a notation was made that plaintiff requested a refill of the Zoloft and Actose prescriptions for his depression and diabetes, respectively. AT 275-76. In March and April of 2004, plaintiff again complained of feeling depressed, and was prescribed Zoloft by medical personnel. AT 280, 283. On August 3, 2004, plaintiff received another yet [sic] refill of Zoloft and Actose for his depression and diabetes problems, respectively. AT 286.

In addition to his various treating sources the plaintiff, and in some cases his medical records alone, have been examined by various consultants. On January 28, 2004, Dr. Sury Putcha, a state agency consultant, completed a physical residual functional capacity assessment, opining that plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently; is capable of standing and walking for at least six hours in an eight hour workday; can sit for six hours in a similar period; and has an unlimited ability to push and/or pull. AT 377-82. Dr. Putcha further reported that plaintiff has occasional postural limitations, but discerned no manipulative, visual, communicative, or environmental limitations. AT 379-80.

Dr. Jeanne Shapiro, a state agency psychiatrist, conducted a psychiatric examination of the plaintiff on February 4, 2004. AT 383-87. As a request of her examination, Dr. Shapiro found that plaintiff's manner of relating, social skills, and overall presentation was adequate; his thought process was coherent; he was oriented, calm, and relaxed; his attention, concentration, recent, and remote memory skills were intact; and his judgment was good. AT 385-86. Dr. Shapiro concluded that while plaintiff may suffer from some psychiatric problems, they are not "significant enough to interfere with [his] ability to function on a daily basis." AT 386.

On March 10, 2004, disability analyst M. Connelly noted findings that plaintiff did not display any abnormalities in his understanding or remembrance of simple instructions, use of judgment, response to supervisors or co-workers in usual work situations, in dealing with changes to routine work settings. AT 389.

On March 19, 2004, Dr. M. Morog, another state agency psychiatrist, prepared a psychiatric review technique form regarding plaintiff, noting his finding that plaintiff's diagnosed impairment of depressive disorder not otherwise specified ("NOS") neither meets nor equals any of the presumptively disabling mental impairments listed in the controlling regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1, including specifically section 12.04. AT 390-403. Dr. Morog further concluded that plaintiff does not suffer from any limitations in his ability to perform the activities of daily living, maintain social functioning, or maintain concentration, persistence or pace, and has experienced no known episodes of decompensation. Id.

On August 23, 2004, Dr. Michael Maselly, another state agency consultative examiner, examined the plaintiff and completed a report regarding plaintiff's physical impairments, which were noted to include lower back problems, diabetes, glaucoma, hypercholesteremia, and high blood pressure. AT 419-23.   In conducting his physical examination, Dr. Maselly found that plaintiff's gait was normal, he could walk on heels and toes without difficulty, squat was full and his stance was normal; no assistive devices were used by him; he did not need help changing for the exam nor did he need help getting on and off the examination table, and he was able to rise from a chair without difficulty. AT 420. Dr. Maselly also reported that plaintiff had full cervical and lumbar spine flexion, extension, and rotary movement bilaterally, straight leg raise was positive, there was a full range of motion in the upper and lower extremities, joints were stable, no muscle atrophy was evident, hand and finger dexterity was intact with grip strength 5/5 bilaterally, and he was neurologically intact. AT 421-22.   Dr. Maselly concluded that plaintiff has marked restrictions in standing, walking, squatting, kneeling, as well as lifting and carrying heavy objects as a result of his back surgeries, but noted no restrictions in activities requiring fine manipulation of his hands. AT 422.

On August 24, 2004, Dr. Kristen Barry, another state agency consultative examiner, conducted a psychiatric evaluation of the plaintiff. AT 424-28. In her report of that examination, Dr. Barry noted that plaintiff had no history of psychiatric treatment, apart from a prescription for Zoloft – a medication which the plaintiff had been taking for two years. AT 424. Dr. Barry reported that plaintiff felt somewhat discouraged and helpless, but that his attention, concentration, and memory skills were intact and his insight and judgment were good. AT 426. She further assessed that plaintiff could follow and understand simple directions, maintain attention and concentration, and though he had some "depressive

symptomology," he was able to make appropriate decisions and relate well with others. AT 427.

On September 9, 2004, Dr. Thomas Harding, another state agency consultant, prepared a psychiatric review technique form in which he noted his opinion that plaintiff's diagnosed impairments of depression NOS and substance abuse neither meet nor equal any of the presumptively disabling impairments listed in the regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1, including listings 12.04 and 12.09.12 AT 436-47. Dr. Harding further opined that plaintiff suffers from mild limitations in his abilities to perform the activities of daily living, maintain concentration, persistence or pace, and maintain social functioning, but that he does not suffer from episodes of decompensation. AT 446.

A state agency medical consultant completed a physical residual functional capacity assessment concerning the plaintiff's limitations on September 7, 2004. AT 429-35. In it, the examiner opined that plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently; is capable of standing and walking for at least six hours in an eight hour workday; can sit for six hours in a similar period; and has an unlimited ability to push and/or pull. AT 430. It was further reported that plaintiff does not experience any postural, manipulative, visual, communicative, or environmental limitations. AT 430-32.

Despite his impairments, plaintiff testified during his administrative hearing that he is able to drive short distances; watch television; read; do the laundry; cook; and care for his personal needs. AT 499-503; see also AT 157-67. Plaintiff is also able to teach Sunday school classes, and regularly attends church services. AT 162, 499-500.

(Report and Recommendation, Dkt. No. 8, pp. 3-14).

## III.   ADMINISTRATIVE LAW JUDGE'S DECISION

To be eligible for Social Security disability benefits, a claimant must establish "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  There is a five-step analysis for evaluating disability claims:

"In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in

Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

In this case, the ALJ found at step one that plaintiff has not engaged in gainful activity since the filing date of his application. (T. 25). At step two, the ALJ determined that plaintiff's chronic low back pain, diabetes mellitus and depression were severe. (T. 25). At step three, the ALJ concluded that plaintiff's impairments neither met nor equaled any impairment listed in Appendix 1 of the Regulations. (T. 25). The ALJ next found that plaintiff retained the residual functional capacity to lift or carry 15 pounds occasionally and less than 10 pounds occasionally, stand for 1 hour, walk for 90 minutes and sit for 6 hours in an 8-hour work day.[2] (T. 25). This analysis was based upon the medical evidence, including reports by treating and evaluating physicians. (T. 22-23). Therefore, at step four, the ALJ concluded that plaintiff was unable to perform any of his past relevant work. (T.24). Relying on the medical-vocational guidelines ("the grids") set forth in the Social Security regulations, 20 C.F.R. Pt. 404, Subpt. P, App.2, the ALJ found that plaintiff's capacity for sedentary work is substantially intact and has not been compromised by any non-exertional limitations. (T. 25). The ALJ concluded that plaintiff was not disabled and denied his application for SSI benefits. The

---

[2] The Magistrate Judge stated that "it seems apparent that the ALJ intended to find the plaintiff capable of lifting or carrying up to fifteen pounds occasionally and less than ten pounds frequently". (Report and Recommendation, Dkt. No. 8, p. 24). Plaintiff has not objected to that portion of the Magistrate's determination.

Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  This action followed.

## IV.    REPORT AND RECOMMENDATION

In the Report and Recommendation, Magistrate Judge Peebles found that: (1) there is substantial evidence to support the ALJ's finding that plaintiff is capable of fulfilling the exertional requirements of sedentary work; (2) the ALJ afforded the appropriate weight to the opinions of plaintiff's treating physician, Dr. Connolly; and (3) the ALJ properly relied upon the grids to determine that plaintiff was capable of performing substantial gainful work in the national economy and therefore was not disabled.  Presently before the Court are plaintiff's objections to the Report and Recommendation.

## V.    DISCUSSION

## A.    Standard of Review

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether plaintiff is disabled.  Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks and citation omitted).  An ALJ is obligated to develop the record regardless of whether claimant is represented by counsel.  *See Shaw*, 221 F.3d at 131 (citations omitted).

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court engages in a *de novo* review of any part of a Magistrate's Report and Recommendation to which a party specifically objects. Failure to object timely to any portion of a Magistrate's Report and Recommendation operates as a waiver of further judicial review of those matters. *See Roland v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993); *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989). The Court will address Plaintiff's objections accordingly.

Plaintiff objects to the Magistrate's Report and Recommendation on four grounds: (1) that the ALJ improperly discounted the opinions of Dr. Connolly; (2) the Magistrate Judge erroneously relied upon the opinions of a nurse practitioner; (3) the ALJ's determination that plaintiff has the residual functional capacity to perform sedentary work is not supported by substantial evidence; and (4) plaintiff presents non-exertional impairments which require the use of a vocational rehabilitation expert rather than reliance upon the grids. (Dkt. No. 9).

**B.    Treating Physician**

**1.      Opinions of Dr. Connolly**

Plaintiff claims that the ALJ entirely rejected and improperly discounted the opinions of Dr. Connolly, plaintiff's treating physician. *See* Plaintiff's Objections at p. 2. An ALJ may accord controlling weight to the opinion of a treating physician if such opinion is "'well supported' by clinical or laboratory diagnostic techniques[.]" *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993). The method by which the Social Security Administration is supposed to weigh medical opinions is set forth at 20 C.F.R. § 404.1527(d). *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). The regulations say that a treating physician's report is generally given more weight than other reports and that a treating physician's opinion will be controlling if it is

"well-supported by medically acceptable [evidence] and is not inconsistent with the other substantial evidence in [the] record." *Snell*, 177 F.3d at 133; 20 C.F.R. § 404.1527(d)(2). Where the evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence. *See* 20 C.F.R. § 416.927(c)(2); *see also Barringer v. Comm'r of Social Sec.*, 358 F.Supp.2d 67, 80 (N.D.N.Y. 2005).

In this case, Dr. Connolly did not prepare a Residual Functional Capacity Assessment. Rather, the doctor states in a medical report that plaintiff "qualifies for Social Security in that he is unable to work in any capacity for any job description in a predictable fashion". (T. 212). The ALJ properly discounted this conclusion regarding plaintiff's ability to work in any capacity for any job. (T. 22).

The final question of disability is expressly reserved to the Commissioner. *See Snell*, 177 F.3d at 134; 20 C.F.R. §404.1527(e)(1). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions." *Snell*, 177 F.3d at 133. Thus, a treating physician's disability assessment is not determinative. *Snell*, 177 F.3d at 133; *Murphy v. Barnhart*, 2003 WL 470572, at *7 (S.D.N.Y. 2003) (the ALJ is not required to give controlling weight to a treating physician's opinions as to the ultimate issue of whether the claimant meets the statutory definition of disability). Therefore, the ALJ's failure to afford the opinions of Dr. Connolly, regarding plaintiff's alleged disability, greater weight was not erroneous. *See Jones v. Barnhart*, 2003 WL 941722, at *10 (S.D.N.Y. 2003) (special significance is not given to treating source opinions that a claimant is "disabled" or is unable to work, as determinations of this kind are strictly reserved to the ALJ).

In any event, the ALJ made his findings "[h]aving considered the medical evidence and the claimant's testimony". (T. 23).   Indeed, the ALJ provided citations to Dr. Connolly's records and conclusions throughout the decision. (T. 21). The mere fact that the ALJ did not specifically state the weight afforded to Dr. Connolly's opinion does not mean that the opinion was not properly considered.[3] *See Marine v. Barnhart*, 2003 WL 22434094, at *3 (S.D.N.Y. 2003) (holding that the ALJ's failure to comment on weight afforded to opinions was not improper as decision indicates that his findings were made "[a]fter consideration of the entire record."). The ALJ provided a detailed summary and analysis of the reports and records of all treating and examining physicians, including Dr. Connolly. Therefore, the ALJ's failure to comment on the weight of evidence was harmless error, and does not provide a basis for a remand to the Commissioner. *See Jones v. Barnhart*, 2003 WL 941722, at *10 (S.D.N.Y. 2003) (holding that no basis for remand even though the ALJ did not specifically state the weight accorded to physicians' opinions; he engaged in a detailed discussion of their findings, and his decision was not in conflict with those opinions); *see also Walzer v. Chater*, 1995 WL 791963, at *9 (S.D.N.Y. 1995) (ALJ's failure to discuss a treating physician's report was harmless error where consideration of report would not have changed outcome).

### 2.    Opinions of RNP Schermerhorn

Plaintiff also contends that the Magistrate improperly relied upon the conclusions of a nurse practitioner. *See* Plaintiff's Objections at p. 3. Plaintiff argues:

> We also note that the Magistrate Judge makes significant reference to the findings of nurse practitioner Schermerhorn in support of the Administrative Law

---

[3] The ALJ provided reasoning for the rejection of the opinion of Dr. Connolly regarding plaintiff's qualifications for Social Security stating, "the final responsibility for deciding if a claimant is disabled under Social Security law is reserved to the Commissioner". (T. 22).

Judge's findings. The Magistrate Judge does not specifically state that the nurse practitioner's findings support the Administrative Law Judge's conclusion. However, the findings of the nurse practitioner are repeatedly and thoroughly noted by the Magistrate Judge, leaving the reader to conclude that they are being sited [sic] for support of the ultimate determination. Certainly, a nurse practitioner's opinions are not a sufficient basis for any determination regarding an individual's disability status under the Social Security case law, rules and regulations.[4]

Plaintiff's Objections at p. 3.

Nurse practitioners are medical sources who may provide opinions on an applicant's level of disability. 20 C.F.R. § 404.1513(d)(1). The reports and conclusions of RNP Schermerhorn were properly considered even though she is not a physician. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 n. 2 (2d Cir. 1983) (opinion of nurse practitioner entitled to some extra consideration). Thus, this Court finds this objection without merit.

Accordingly, this Court concurs with the Magistrate Judge that the ALJ afforded the proper weight to Dr. Connolly's opinion. This Court agrees that the ALJ's decision to reject the opinion of Dr. Connolly regarding plaintiff's ability to work is supported by substantial evidence. Further, the reports and opinions of the nurse practitioner were properly considered by the Magistrate Judge and the ALJ.

**C.      Residual Functional Capacity**

The ALJ determined that plaintiff has the residual functional capacity to perform substantially all of the full range of sedentary work. (T. 26). Plaintiff objects to this finding reiterating the argument that the ALJ disregarded Dr. Connolly's opinions. Plaintiff further argues that the ALJ's analysis is most consistent with the one time examination by Dr. Sury Putcha. *See* Plaintiff's Objections at p. 3. As discussed above, Dr. Connolly's opinion that

---

[4] Plaintiff cites to no authority for this objection.

plaintiff is totally disabled is an opinion that the ALJ is free to disregard.

Residual functional capacity is:

"what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96-8p"), 1996 WL 374184, at *2 (S.S.A. July 2, 1996)).  In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis.  20 C.F.R. § 404.1545(a).

In this case, the ALJ found that plaintiff has the residual functional capacity to perform sedentary work.  Sedentary work is defined as:

involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

Pursuant to 20 C.F.R. § 404.1527(1), every medical opinion, regardless of its source, must be evaluated. In determining how much weight to grant a medical opinion several factors are considered including:  (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion,

14

i.e. '[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight' that opinion is given; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; if it is, it will be accorded greater weight; and (v) other relevant but unspecified factors. *Schisler v. Sullivan*, 3 F.3d. 563, 567 (2d Cir. 1993) (citing 20 C.F.R. § 404.1527(d)(1) (d)(6); 20 C.F.R. § 416.927(d)(2)).

Under 20 C.F.R. § 404.1527, not only may the reports of consultative or non-examining physicians constitute substantial evidence of disability, they may even override the opinions of treating physicians. *See Snell v. Apfel*, 177 F.3d 128, 132-33 (2d Cir. 1999) (two treating physician's reports not entitled to controlling weight because they were inconsistent with the findings of several consultative examinations); *Cruz v. Barnhart,* 2006 WL 1228581, at *11-14 (S.D.N.Y. 2006) (holding that consultative examinations given controlling weight over treating physician's opinion that was not consistent with the medical record, the claimant's daily activities or the opinions of other physicians); *Punch v. Barnhart*, 2002 WL 1033543, at *12 (S.D.N.Y. 2002) (concluding that "the report of a consultative physician can contribute substantial evidence" in overriding opinion of treating physician).

This Court, having reviewed the entire record, concludes that there is substantial evidence to support the ALJ's determination that plaintiff retains the RFC to perform a full range of sedentary work.  As noted by the Magistrate Judge, the findings of the state agency physicians are consistent with the reports and opinions of  plaintiff's treating doctors including Dr. Connolly's reports. (Dkt. No. 8, p. 27).

On January 28, 2004, Dr. Putcha, a state agency consultant, found that plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; is capable of standing and walking for at least six hours in an eight hour workday; can sit for six hours in a similar period; and has an unlimited ability to push and/or pull. (T. 377-382). Dr. Putcha concluded that "[t]he pain in the back is well controlled . . . he is capable of doing light work level activity". (T. 378). In August of 2004, Dr. Maselly, another state agency consultant, found that plaintiff had a normal gait, his squat was full and his stance was normal. (T. 420). A review of the record reveals that these opinions and conclusions are consistent with other medical evidence and opinions.

On August 6, 2003, following plaintiff's second back surgery, RNP Schermerhorn reported that plaintiff was "doing well with his pain pattern, with control of his diabetes and his blood pressure." (T. 210). In a report dated September 8, 2003, Dr. Connolly documented excellent improvement in plaintiff's condition, noting that there were no signs of nerve tension, the numbness in plaintiff's legs was virtually gone, and there was "good relief of the back pain." (T. 211). Those findings were reiterated in a report of a November 17, 2003 followup visit with Dr. Connolly. (T. 212). During that examination, Dr. Connolly noted that plaintiff should increase his activities and exercises. (T. 212). In February of 2004, RNP Schermerhorn found that plaintiff's gait was normal and that he was managing his weight by exercising and walking. (T. 213). In July of 2004, Dr. Frederickson opined that plaintiff may be able to return to some type of limited duty. (T. 215). Dr. Lebduska, a rehabilitation specialist, examined the plaintiff on April 1, 2005 at the request of Dr. Frederickson and found that plaintiff was capable of performing sedentary work. (T. 478, 480).

In this case, the consultative reports were consistent with each other and with the objective medical evidence. Plaintiff's medical records indicate a history of degenerative disc disease with back pain and some reduced range of motion, but during his most recent examination, RNP Schermerhorn concluded that plaintiff was neurologically intact.[5]  (T. 219, 221).  Thus, the consultative examiners' findings that plaintiff could perform sedentary are consistent with the records of the treating physicians, as the ALJ found.  *See Casino-Ortiz v. Astrue*, 2007 WL 2745704, at *9 (S.D.N.Y. 2007).

Plaintiff's ability to perform sedentary work is further supported by his testimony during the hearing.  Plaintiff testified that he teaches Sunday school and attends church very week. (T. 500).  Plaintiff stated that he does not need any devices to ambulate. (T. 490).  He testified that he makes dinner for his family three or four times a week and stands for 10 to 15 minutes at a time. (T. 501).  He is able to drive, care for his own personal hygiene, and perform household tasks. (T. 499-503).

Thus, the Court is satisfied that the ALJ employed the correct legal standards and substantial evidence exists to support the ALJ's decision with regard to plaintiff's RFC to perform sedentary work.

**D.     Use of a Vocational Expert**

The Magistrate Judge found ample evidence in the record to support "the ALJ's finding to the effect that plaintiff's nonexertional limitations resulting from pain, side effects from medication and depression, did not sufficiently erode the range of jobs upon which the grid is

---

[5]  The last record of treatment with RNP Schermerhorn  was on April 13, 2005.  At that time, plaintiff had a normal gait; could heel-toe walk; exhibited no signs of no clonus; no long tract signs; and no nerve tensions signs with positive straight leg raising. (T. 219-221).

predicated". (Dkt. No.8, p. 35). Plaintiff objects to this conclusion and asserts that the ALJ's failure to utilize a vocational expert was wholly improper. Plaintiff claims that he suffers from non-exertional impairments, including chronic pain, depression and drowsiness as a side effect of medication which are documented in his medical records. *See* Plaintiff's Objection at p. 5. Consequently, plaintiff argues, the ALJ was not entitled to rely on the grids to sustain his burden at step five, but should have obtained testimony from a vocational expert regarding whether there were jobs he could perform despite his limitations. *See* Plaintiff's Objection at p. 4 - 5.

Under the Social Security Act, the Commissioner bears the burden of proof for the final determination of disability. *Pratt v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996). Generally speaking, if a claimant suffers only from exertional impairments, then the Commissioner may satisfy his burden by resorting to the applicable grids.[6] *Pratt*, 94 F.3d at 39. The grids "take[ ] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience". *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). Ordinarily, the ALJ need not consult a vocational expert, and may satisfy this burden "by resorting to the applicable medical vocational guidelines (the grids)". *Rosa*, 168 F.3d at 78 (citing 20 C.F.R. Pt. 404, Subpt. P, App.2).

The Second Circuit has held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert or preclude reliance" on

---

[6] An "exertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet the strength demands of jobs (i.e. sitting, standing, walking, lifting, carrying, pushing, and pulling). 20 C.F.R. §§ 404.1569a(b), 416.969a(b); *see also Rodriguez v. Apfel*, 1998 WL 150981, at *10, n. 12 (S.D.N.Y. 1998).

the grids.[7]  *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).  The testimony of a vocational

expert that jobs exist in the economy which claimant can obtain and perform is required only

when "a claimant's nonexertional impairments significantly diminish his ability to work-over

and above any incapacity caused solely from exertional limitations-so that he is unable to

perform the full range of employment indicated by the medical vocational guidelines."  *Bapp*,

802 F.2d at 605-06.  The use of the phrase "significantly diminish" means the "additional loss

of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's

possible range of work as to deprive him of a meaningful employment opportunity".  *Bapp*,

802 F.2d at 606.  Under these circumstances, to satisfy his burden at step five, the

Commissioner must "introduce the testimony of a vocational expert (or other similar evidence)

that jobs exist in the economy which claimant can obtain and perform."  *Rosa*, 168 F.3d at 78

(quoting *Bapp,* 802 F.2d at 604).   Therefore, when considering nonexertional impairments, the

ALJ must first consider the question - whether the range of work the plaintiff could perform

was so significantly diminished as to require the introduction of vocational testimony.

*Samuels v. Barnhart*, 2003 WL 21108321, at *12 (S.D.N.Y. 2003) (holding that the regulations

require an ALJ to consider the combined effect of a plaintiff's mental and physical limitations

on his work capacity before using the grids).

        In this case, the ALJ found that plaintiff's impairments precluded him from performing

his past relevant work.  (T. 26).  There is no question that the record supports these findings.

_____

        [7]  A "nonexertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. §§ 404.1569a(c), 416.969a(c). Examples of nonexertional limitations are nervousness, inability to concentrate, difficulties with sight or vision, and an inability to tolerate dust or fumes. 20 C.F.R. §§ 404.1569a(a), (c)(i), (ii), (iv), (v), 416.969a(a), (c)(i), (ii), (iv), (v); *see also Rodriguez v. Apfel*, 1998 WL 150981, at *10, n. 12 (S.D.N.Y. 1998).

The ALJ further determined that "the claimant's allegations as to the limiting effects of his impairments are not entirely credible, at least not to the extent that he would be unable to perform work at any level of exertion". (T. 23).  The ALJ considered plaintiff's complaints of chronic pain and depression and found that despite those claims, that he would be able to perform work at a sedentary level. (T. 23).   The ALJ further referred to "nonexertional limitations" and found that "[t]he claimant's capacity for sedentary work is substantially intact and has not been compromised by any nonexertional limitations".  (T. 26).  In his objections, plaintiff fails to allege any nonexertional work demands that he cannot perform because of his alleged impairments.  In addition, plaintiff's medical records are devoid of any reference to any nonexertional limitations or restrictions.  *See Casino-Ortiz v. Astrue*, 2007 WL 2745704, at *13 (S.D.N.Y. 2007).   Thus, this Court agrees with the Magistrate Judge that there were no non-exertional impairments which would preclude reliance upon the grids.

In his decision, the ALJ outlined and considered with sufficient detail the medical evidence regarding plaintiff's pain, depression and drowsiness.  *See Niven v. Barnhart*, 2004 WL 1933614, at *8 (S.D.N.Y. 2004) (holding that although the ALJ did not state that plaintiff's impairments were insignificant, the ALJ directly addressed the impact of the nonexertional impairments).  With respect to plaintiff's complaints of chronic pain, the ALJ found "the claimant's allegations regarding his limitations are not totally credible". (T. 25).  Furthermore, the Magistrate Judge addressed plaintiff's subjective complaints of pain and recommended affirming that conclusion. (Dkt. No. 8, p. 34).  As plaintiff does not object to that recommendation, this Court concludes that plaintiff's pain is not a nonexertional impairment that erodes the occupational base.

Plaintiff also claims that he suffers from depression.  The ALJ specifically referenced plaintiff's complaints in his decision, and examined whether there was medical evidence to support them. (T. 23).  The ALJ discussed plaintiff's alleged depression and found that the only treatment plaintiff received for his depression was from his primary care physician, Dr. Telonis.  (T. 22).  Dr. Telonis prescribed Zoloft but never performed a mental status examination and never discussed the complaints of depression.  (T. 22).  Dr. Telonis never provided an assessment of plaintiff's mental abilities. (T. 22).  Dr. Shapiro, the state agency consultant, found that plaintiff's depression was not significant enough to interfere with his ability to function on a daily basis.  (T. 22).  Other state agency consultants found that plaintiff's depression was not a severe impairment.  (T. 23).

With respect to plaintiff's claim of drowsiness, the Magistrate Judge found that "his medical records do not reflect any complaints made by him to his doctor's concerning this issue". (Dkt. No. 8, p. 34)  Upon a review of the record, this Court agrees with the Magistrate's conclusion.  In fact, in plaintiff's objection, he only states that he "testified to complaints of pain as well as side effects from medication including drowsiness".  *See* Plaintiff's Objection at p. 5.  Plaintiff does not cite to any medical records or reports of any consultative or treating physician which support this claim.  Thus, this Court concludes that any claims of drowsiness would not significantly diminish plaintiff's range of work.

The ALJ stated that "the claimant did not receive counseling or psychiatric care for his alleged depression".  (T. 23).  He further noted that he is able to "attend to all personal and daily living needs independently and to prepare meals and care for his children".  (T. 23).  In essence, the ALJ concluded that plaintiff's activities were consistent with a sedentary exertion

level.  (T. 23).  Hence, there was no need to call a vocational expert. *See Rodriguez*, 1998 WL

150981, at *10 (holding that plaintiff's claims of pain and drowsiness from medications were

not supported by the medical evidence and were not credible, therefore, the non-exertional

impairments did not "significantly diminish" her work capacity such that she could not

perform the full range of sedentary employment as indicated by the grids).

    This Court finds that the ALJ properly considered plaintiff's pain, depression and

drowsiness and determined they would not significantly diminish his range of work to deprive

him of meaningful employment.  As such, the ALJ did not err in failing to request the presence

of a vocational expert to determine whether plaintiff could perform light work. *Elias v. Apfel*,

54 F.Supp.2d 172, 178 (E.D.N.Y. 1999) (holding that the ALJ specifically noted that plaintiff's

symptoms were not of sufficient severity, frequency, and duration so as to cause disability and

significantly diminish his ability to perform light work).   Accordingly, the Court finds this

objection to be without merit.

**VI.    CONCLUSION**

    Based upon the foregoing, and the reasons stated in the Report and Recommendation, it

is hereby

    **ORDERED** that the Report and Recommendation of Magistrate Judge David E.

Peebles is **ADOPTED** in its entirety; and it is further

    **ORDERED** that the complaint is **DISMISSED**.

    **IT IS SO ORDERED.**

Dated: September 17, 2008
          Syracuse, New York

Norman A. Mordue
Chief United States District Court Judge